THE PEOPLE *ex rel.* FRANCES MATHIS, Plaintiff-Appellant, *v.* JAMES BROWN, Defendant-Appellee.

First District (2nd Division)   No. 62950

Opinion filed November 16, 1976.—Rehearing denied January 21, 1977.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner and Ellis B. Levin, Assistant State's Attorneys, of counsel), for appellant.

Ron Fritsch, of Chicago, for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

This case involves the right of a defendant in a paternity action to refuse to answer deposition questions based upon the privilege against self-incrimination found in the fifth amendment of the United States Constitution. Plaintiff, Frances Mathis, filed this action against defendant, James Brown, charging him as the putative father of her daughter, Patrice

La Tasha Mathis, born October 14, 1973. At a bench trial the court found in favor of defendant. The State now appeals and raises the following issues for our consideration: (1) whether defendant had the right or privilege to refuse to answer deposition questions in a paternity action; and (2) whether the court's finding was against the manifest weight of the evidence.

Plaintiff filed her complaint on July 10, 1974, pursuant to the Paternity Act. (Ill. Rev. Stat. 1973, ch. 106¾, par. 51 *et seq.*) Defendant waived his right to a jury trial and both parties were ordered to take cross-depositions. At a deposition held on May 6, 1975, defendant refused to answer a series of questions concerning his relationship, if any, with plaintiff. The State subsequently presented to the trial court a certified copy of the questions which defendant had refused to answer and requested an order to compel him to answer or, in the alternative, to bar him from testifying at trial. The motion was denied, with the trial court noting that a paternity action has "many criminal aspects" including the use of the word "accused" in the relevant statute, the appointment of a public defender pursuant to statute, and the statutory demand of an appearance bond. Although the trial court mentioned a few questions which should or should not be answered, it did not go through all of the questions which had remained unanswered. Another deposition was then held on May 12, 1975, and again defendant refused to answer several questions on advice of counsel. A second motion to compel answers was filed and denied by the trial court, citing its earlier ruling, and also stated that it would not hear each disputed question; that it would not compel defendant to make an admission; and that it would not compel answers to questions concerning sexual intercourse because such questions are very incriminating in paternity cases.

The trial then commenced with the State calling defendant as a section 60 witness. (Ill. Rev. Stat. 1973, ch. 110, par. 60.) He testified that he had had sexual relations with plaintiff once in 1968 at her apartment, but denied having relations with her or seeing her socially on any other occasion. After defendant's testimony, plaintiff testified that she and defendant had maintained a sexual relationship since 1963; that between 1963 and 1965 they engaged in intercourse about twice a week; that after a separation from her husband she resumed relations with defendant from 1970 until April 1973; that she was seen socially with defendant several times; and that she had not had sexual relations with any other man from December 1972 through March 1973. Plaintiff's sister, Alice Yoa, and niece, Priscilla Prim, both testified that they had seen defendant and plaintiff together on social occasions: at plaintiff's apartment, at the home of her parents, and at a lounge.

Darrell Holloway testified for defendant that during February 1972,

plaintiff telephoned his wife three times; and that he remained on the extension. Holloway heard plaintiff tell his wife that she was pregnant, that the father was some man other than defendant, and that plaintiff had originally planned to marry that other man. On cross-examination Holloway said the conversations took place in 1974 and then changed the date to the fall of 1973. He also admitted that defendant had moved into his home before the trial but stated that they had not discussed his testimony.

At the completion of all evidence, the trial court found that defendant was not the father of the child. On behalf of the plaintiff, the State now appeals.

## I.

■■■ We note at the outset that, although a proceeding pursuant to the Paternity Act may have the appearance of a criminal prosecution, it is actually a civil proceeding. (*Cessna v. Montgomery* (1976), 63 Ill. 2d 71, 89, 344 N.E.2d 447; *People ex rel. Meyers v. Glees* (1926), 322 Ill. 189, 190, 152 N.E. 575; *People ex rel. Harris v. Williams* (1st Dist. 1972), 8 Ill. App. 3d 821, 823-24, 291 N.E.2d 323; *Clark v. Brown* (1st Dist. 1970), 121 Ill. App. 2d 280, 286, 257 N.E.2d 565.) The purpose of the proceeding is to determine the identity of the putative father, to provide support for the illegitimate child, and to prevent it from becoming a public charge. (*People ex rel. Blackmon v. Brent* (1st Dist. 1968), 97 Ill. App. 2d 438, 442, 240 N.E.2d 255; *Cornmesser v. Laken* (2nd Dist. 1963), 43 Ill. App. 2d 324, 328, 193 N.E.2d 337, *cert. denied* (1964), 379 U.S. 822, 13 L. Ed. 2d 32, 85 S. Ct. 43, *rehearing denied* (1964), 379 U.S. 924, 13 L. Ed. 2d 337, 85 S. Ct. 272.) In a paternity suit the plaintiff's burden of proof is by a preponderance of the evidence (*People ex rel. Staples v. Prude* (1st Dist. 1974), 18 Ill. App. 3d 269, 271, 309 N.E.2d 670; *Schultz v. Peeler* (5th Dist. 1973), 10 Ill. App. 3d 937, 938, 295 N.E.2d 252; *People ex rel. Bucaro v. Johnson* (1st Dist. 1972), 8 Ill. App. 3d 618, 624, 291 N.E.2d 9); and provisions of the Civil Practice Act are applicable unless a specific provision of the Paternity Act requires otherwise (*Petrous v. Roberts* (2nd Dist. 1973), 12 Ill. App. 3d 992, 994, 299 N.E.2d 322).

The State in this case followed the procedure set out by our supreme court rules: it presented to the court a certified copy of the questions which defendant had refused to answer. (Ill. Rev. Stat. 1973, ch. 110A, par. 207(b).) After each frustrated deposition the State moved to compel answers to deposition and, in the alternative, to bar defendant from testifying at trial. Each motion was denied. The record reflects that the court stated at the hearing on the second motion:

> "THE COURT: I am ruling as I did before, there has to be certain questions. Now, the proper way to handle this will be to

com [*sic*] in and ask me for a rule to show cause why he didn't answer the questions, but this is not the proper way. I'm not going over each and every one of these questions, unless you come in on a rule to show cause. You come in on a ulre [*sic*] to show cause where failure to answer questions I ordered him to answer. At this point I'm saying we're on trial, let's get the case goin [*sic*]."

Supreme Court Rule 219(a), however, illustrates that the State properly moved the court for an order compelling answers. (*Cf. Carlson v. Healey* (2nd Dist. 1966), 69 Ill. App. 2d 236, 215 N.E.2d 831.) In responding to the motion, the trial court should have entered an order either denying the motion based upon the applicability of the fifth amendment privilege to each unanswered question or granting the motion with an enumeration of each question to be answered. Had the court clearly ordered defendant to answer certain designated questions and had defendant thereupon refused to comply, the court could have then invoked any of the sanctions authorized by our supreme court, including contempt proceedings. Ill. Rev. Stat. 1973, ch. 110A, par. 219(c).

■■ Although a party may claim the fifth amendment privilege in any proceeding, whether civil or criminal (*People ex rel. Keith v. Keith* (1967), 38 Ill. 2d 405, 410, 231 N.E.2d 387; *People v. Rimicci* (1st Dist. 1968), 97 Ill. App. 2d 470, 478, 240 N.E.2d 195), the propriety of invoking the privilege must be determined by the court when the question is presented to it in an appropriate fashion (*People v. Conzo* (1st Dist. 1939), 301 Ill. App. 524, 534-35, 23 N.E.2d 210). In making that determination the court should not be skeptical; instead, the court should be aware that "in the deviousness of crime and its detection, incrimination may be approached and achieved by obscure and unlikely lines of inquiry." (*People v. Burkert* (1955), 7 Ill. 2d 506, 518, 131 N.E.2d 495.) Thus, it must be perfectly clear under all of the circumstances that the answers cannot possibly have a tendency to incriminate the party claiming the privilege. *Hoffman v. United States* (1951), 341 U.S. 479, 488, 95 L. Ed. 1118, 71 S. Ct. 814; *cf. People v. Hartley* (4th Dist. 1974), 22 Ill. App. 3d 108, 111, 317 N.E.2d 57.

■■ Yet the mere assertion of constitutional privilege does not automatically insulate a party from the usual duty to comply with discovery. The deponent must have a reasonable ground to fear self-incrimination if he is compelled to answer (*People v. Schultz* (1942), 380 Ill. 539, 544, 44 N.E.2d 601); fanciful or imaginary dangers will not suffice (*In re Holland* (1941), 377 Ill. 346, 355, 36 N.E.2d 543). In the case at bar, therefore, the trial court should have scrutinized each disputed question and clearly ruled on the reasonableness of defendant's refusal to answer. The court's method of recognizing a fifth amendment claim proved both confusing and erroneous. That method permitted defendant to make

potentially unjustified claims of self-incrimination. As defendant testified fully at trial, however, we must now determine if the court's erroneous procedure unfairly prejudiced the State.

## II.

The State maintains that the trial court's refusal to require defendant to answer the deposition questions concerning his social and sexual relationship with plaintiff imposed a significant burden on it in the preparation and trial of the cause. Yet the State itself first called defendant as a witness pursuant to section 60. (Ill. Rev. Stat. 1973, ch. 110, par. 60.) In his examination defendant denied having been seen socially with the plaintiff and admitted that a single act of sexual intercourse had occurred in 1968. He answered all questions propounded to him by the State. Although this testimony was first elicited at trial rather than at the depositions, we do not believe the State was seriously prejudiced. In calling defendant as a section 60 witness, the State was not concluded by his testimony; in fact, the record clearly shows that defendant's testimony was rebutted by the countertestimony of the plaintiff, Yoa, and Prim.

Further, the State argues that it was unable to prepare its case to refute the testimony of defendant's witness, Holloway. The State neither took a deposition from Holloway, nor asked for a continuance in which to more thoroughly prepare for trial. Those failures are not chargeable to defendant; the State's own lack of preparation will not serve as a basis for reversal. We also note that the slow pace of the trial inured to the State's benefit, not prejudice. In complaining of Holloway's unexpected testimony, the State overlooks the fact that the first portion of the witness's testimony took place on June 16, 1975, and was not resumed until July 15, 1975. Thus, the State had an additional month in which to prepare for its cross-examination of Holloway.

■■ We have already discussed the erroneous procedure used by the trial court in dealing with the motion to compel answers; as wrong as it was, however, we can see no prejudice to the State.

## III.

■■ ■ Lastly the State contends that the trial court's finding was against the manifest weight of the evidence. Here defendant's testimony was supported by Holloway; the plaintiff's testimony was supported by her niece and sister. While we readily agree that in a paternity action the complainant is forced to prove her case by circumstantial evidence and such evidence is to be afforded great weight on appeal (*People ex rel. Dalman v. O'Malley* (1st Dist. 1963), 43 Ill. App. 2d 95, 99, 192 N.E.2d 589), this case depends on the credibility of witnesses. The trial court stated on the day of its decision that after hearing the witnesses and

observing their demeanor, it believed that defendant was not the putative father of the child. There is support in the record for that finding. As a consequence, we will uphold the trial court's finding; it is not against the manifest weight of the evidence. *People ex rel. Wider v. Johnson* (5th Dist. 1975), 26 Ill. App. 3d 192, 192-93, 324 N.E.2d 722; *People ex rel. Walsh v. Kilbride* (3rd Dist. 1974), 16 Ill. App. 3d 820, 823, 306 N.E.2d 879.

For the reasons herein stated the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

HAYES and JIGANTI, JJ., concur.